Good morning. Mr. Neal, you may proceed. Thank you, your honor, and may it please the court. Jason Neal on behalf of Appellant John Proctor. In Aparicio-Soraya, this court held that an offense is not a violent felony under the Armed Career Criminal Act when there is precedent from state courts stating that the degree of force required as an element of the offense is an offensive physical contact. We have such precedent from the Maryland courts for Mr. Proctor's offense of assault with intent to prevent lawful apprehension. In Claggett v. State, for example, the court said that assault with intent to prevent lawful apprehension encompasses any, quote, unlawful application of force to another, however slight. Cases like Hall v. Barrios, discussed at length in our briefs, explicitly say the same thing, that the actus reus of assault with intent to prevent lawful apprehension is simple common law assault. The district court erred in concluding that this offense is a violent felony. This court should reverse and remand its case for resentencing. Now, the government resists that conclusion through a series of arguments, and I don't think that the arguments are persuasive, but I know two things critically at the outset. First, the government cites zero Maryland cases supporting its theory that the conduct required for assault with intent to prevent lawful apprehension means something other than simple common law assault. Second, the government makes some, I think, freestanding statutory interpretation arguments, but it doesn't swear them with the reasoning of Hall, Claggett, and Barrios, or with the plain statements that we cite in our briefs. And it doesn't do that, I think, because it can't. So, for example, the government cites the Supreme Court's decision in Stokely, which dealt with robbery under Florida law, and the government argues by analogy here that, like robbery understood in Stokely, assault with intent to prevent lawful apprehension requires force sufficient to overcome a victim's resistance. Now, this court rejected that argument in Jones, and I think it was right to do so, and the reasoning of Jones applies here even more powerfully. So, in Jones, this court explains that the language, the quote that the government seizes on here, the force to overcome a victim's resistance, is really unique to robbery. It is the force required to commit robbery, and it's what distinguishes robbery from other theft offenses from the person, like pickpocketing or larceny. But the court noted that the offense in Jones, which was assaulting, beating, or wounding an officer while resisting arrest, didn't share the same connection to the Armed Career Criminal Act as a textual or historical matter that robbery did. It doesn't require the same sort of force. So, the reasoning from Stokely about overcoming a victim's resistance just didn't apply there, and it doesn't apply here. Second, this court noted in Jones that Stokely squared its analysis with the Johnson 1-4 standard. It didn't purport to change that standard. It simply was analyzing the particular offense of robbery, and it concluded that the force required to commit robbery satisfied the Johnson 1-4 standard. Third, I think here, just as a practical matter, the idea that one needs to overcome the resistance of a victim in order to commit assault with intent to prevent lawful apprehension just doesn't really make sense. Again, force sufficient to overcome a victim's resistance is what makes robbery robbery. Here, by contrast, the actus reus of this offense is assault, and that doesn't require overcoming a victim's resistance. Stokely really discussed a physical struggle for committing assault. Here, you could assault a law enforcement officer. Here, you could assault a person who's not a law enforcement officer for assault with intent to prevent lawful apprehension, and the intent that you need to have to commit the offense is simply the intent to get away, that either you, the person who commits the assault, or another person who is trying to evade apprehension succeed in getting away. You just need to have an assault paired with that argument in Jones. Of course, you do the exact same thing here. The government also relies on cases discussing our statute, our events, assault with intent to prevent lawful apprehension, in the context of the Maryland handgun statute that criminalized the use of a handgun in a crime of violence. It argues that because Maryland courts considered this event a crime of violence for purposes of that particular statute, that that's indicative of the level of force here for our career criminal act purposes. The problem with the government's argument is that crime of violence was defined very specifically in that Maryland handgun statute. This is discussed in the Hall case that we cited and in the Sankster, S-A-N-G-S-T-E-R case that we cited in our briefs. A crime of violence for that statute was defined to include an assault with intent to commit another offense punishable by more than a year in prison. The definition of crime of violence turned on the length of imprisonment for the offense, not any requirement of violent physical conduct. Here, for assault with intent to prevent lawful apprehension, the Maryland court resumed in the Hall that while preventing lawful apprehension is not itself an offense punishable by more than a year in prison, it is the equivalent of resisting arrest, which it's an offense punishable by more than a year in prison. Because of that equation of preventing lawful apprehension to resisting arrest, the court concluded that assault with intent to prevent lawful apprehension satisfied this particular definition. But I think there are two things to take away here. First, the definition of crime of violence in the handgun statute the government cites did not require violent physical force. It was tied to the length of the punishment. And so I think it's just an apposite here. Second, in discussing this statute in Hall, the Maryland courts equated this offense to resisting arrest. Now, this court considered Maryland resisting arrest in apresia soria on bond, and the court concluded that resisting arrest itself is not a violent felony. And so we are left here with two elements to our offense. First, assault, which Maryland courts have repeatedly told us is simple common law assault. It doesn't require violent physical force. And we have an intent element that Maryland courts had equated to resisting arrest, which this court has also addressed and concluded does not require violent physical force. It's not a violent felony. And so both elements here point in the same direction, that assault with intent without lawful apprehension is not a violent felony under the Armed Career Criminal Act. Next, the government cites a case law from this court discussing other intent elements, like the intent to murder. And the government argues that an intent element can categorically make an offense a violent felony under the Armed Career Criminal Act. I don't dispute the premise, but I think the government's comparison of this offense to those other violent intents is misplaced here. So in United States against battle, this court dealt with assault with intent to murder, and the court said that it is impossible to intend the death or physical injury to your victim without using or attempting to use violent physical force under the Armed Career Criminal Act. And that makes sense. Tell me your thoughts on the Bowers case, the specific facts there. I mean, we got a case there in which the most innocent conduct that was criminalized was the defendant Graham pushed into a crowd and pushing against officers. And why is that not violent conduct? I think it's an interesting question, Your Honor, whether the push by the defendant Graham into the crowd of this violent physical force. I would note that the defendant there was not pushing directly against the officers. He was pushing, as you said, Your Honor, into a crowd. And so I think it's a little bit difficult to gauge the level of force that that person was maybe applying in the context of an actual assault there. But I think the more important point about the Barrios case is that, first, the court explained the meaning of the statute in this that assault is a common law offense. It includes assault or battery. And second, that under Apparitio Soraya, we don't need a case involving actual offensive physical contact to satisfy Garam Kerkula, to satisfy the categorical approach or to demonstrate that there's a realistic probability that the statute encompasses this kind of thing. Is there any difference to Barrios that the statute there has been repealed? I don't think the fact that this statute has been repealed changes the analysis here very much, Your Honor. When the statute was in effect for Mr. Proctor, the elements of the offense were assault with intent to prevent unlawful apprehension. There's no dispute about the elements of the offense. And when he was convicted, it carried a defined punishment that differentiated it from general assault. And so, no, I don't think the fact that it's been repealed really changes much, other than that I think it limits the scope of other cases that we could look to for other ways in which people have violated the statute. When the statute was repealed, we were sort of cut off from further examples of how the state had violated it. Fortunately, we have Hall, Claggett, Barrios, other cases that we cite in our opening brief and our reply brief that make very plain that assault in the context of the statute means assault. And they discuss this offense, including the intent element, without ever suggesting that the intent element here, the intent to prevent unlawful apprehension, changes the level of physical force involved. And also, more importantly, it encompasses all the meanings of common law assault, correct? Yes, Your Honor. All the meanings of common law assault. So that could be offensive physical contact, but it could be all the other myriad ways of committing assaults or battery that this court has held in cases like Royal, who said you've repeatedly observed that second degree assault under Maryland law is not a violent felony. It doesn't require violent physical force. You know, it's interesting, this section 386 conviction here, your client served one year and then was suspended. But in 1985, that offense required an 18-month sentence. So are we certain he was convicted under that statute? At least it looks like that's what he required minimally to serve 18 months. That's an interesting question, Your Honor. I'm not sure about the impact of the amount of time that he served. It may be a feature of Maryland law that his sentence was suspended in that way. I do think we can be confident that the offense he was convicted of here was assault with intent to prevent unlawful apprehension. Certainly this court can assume it for its analysis. It's not in dispute by us or the 25 specifically refers to assault with intent to prevent lawful apprehension as one of the three offenses set out there in as predicate offenses for criminal purposes. So I think this court can securely consider this case with that offense in mind. Do you see any tension in the fact that 386 talks about aggravated assault with your argument? No, Your Honor. I don't think that the idea of this as an aggravated assault is a problem for us. The statute doesn't use the word aggravated, but I would acknowledge that cases including Claggett called this an aggravated assault. So maybe two points, Your Honor. So Claggett called this an aggravated assault, but Claggett also repeatedly referred to the conduct required as simple common assault or battery. Second, we discussed cases in our reply brief about the meaning of aggravated assault. I think the government's idea is that aggravated means violent, but that's not really the case. Aggravated just means there's the presence of some aggravating factor. That could be that the outcome of the offense is violent or that there's violent intent, but it can also mean some other prescribed intent as here, the intent that the assault interfere with a legitimate attempt to arrest a person. I think as a policy matter, Maryland is entitled to consider that specific intent to be one worthy of, you know, pairing with assault in a criminal statute and setting out a defined punishment for it. But I don't think it's indicative of the level of physical force required to complete the offense and satisfy the statute. I just know one other thing before I conclude, Your Honor, unless there are other questions, the government makes this No Skintura Associus argument that there are other pieces of the Section 386 offense that are more violent. Two points in response to that, I would say. First, the inference that the government draws from that, that assault must mean something heightened, something above normal assault, is just not supported by the Maryland case law. There's no indication that that's how Maryland courts interpret this statute. And second, this court rejected a similar No Skintura Associus argument in Jones, where the government relied on the fact that assault was used in a series, I think, assaulting, beating, or wounding an officer to mean that assault must mean some more serious thing than common law assault. And the court rejected that proposition there. And again, I think it should reject that proposition here. If the court has no further questions, I will happily reserve the remainder of my time for rebuttal. Thank you, Mr. Neal. Counselor, you'll have to help me with your last name. I would like to pronounce people's name correctly. Tewi. Your Honor. Yes, thank you. You may proceed, Mr. Tewi. Thank you, panel, and may it please the court. I'd like to start with addressing a question that it's about the structure of the statute. The structure of the statute that existed at the time, it was clearly meant to encompass aggravated or elevated assault offenses. Here, within the same statute, we have things like assault by shooting, assault by stabbing, cutting, or wounding, assault with intent to maim, disable, or disfigure. This is some of the most egregiously violent assault conduct that Maryland law has criminalized. Now, admittedly, there is a difference between the completed act of maiming, let's say, which must result in physical pain or injury. But Johnson does not require that the force applied always result in physical pain or injury. It only requires that the force used is capable of causing physical pain or injury. And that was part and parcel to the Supreme Court's conclusion in Stokely. That force capable of overcoming a victim's resistance must be capable of causing physical pain or injury. This is true, the court said in Stokely, because robbery, the offense in that case, necessarily involves a physical confrontation and struggle. And that it is the physical contest between the criminal and the victim that is itself capable of causing physical pain and injury. And from that, there would be no need to distinguish assault with intent to prevent lawful apprehension from something like resisting arrest, and in so doing, also assigning more severe penalties if it just encompassed the same type of conduct that was already covered under the statute. Not only that, but we have... Excuse me. Is de minimis assault sufficient for conviction here? It is insufficient for a conviction under assault with intent to prevent lawful apprehension. It is not sufficient. I'm sorry, I thought you said it was sufficient, then you said it wasn't. I guess I misunderstood you. No, no. I'm sorry. Insufficient. It's not sufficient, Rob. De minimis assault is not sufficient. And we know this because, for one, we have Maryland case law, the case of Claggett, which states that 386 is directed at aggravated assaults against the person. And we also have another case, Sankster v. State, and that's for Maryland's highest court, in which the court characterizes assault, this type of assault, as an aggravated assault that clearly, and I emphasize the word clearly because the Maryland courts use that word, falls within the definition of crime of violence. Now, there is the caveat there that crime of violence, the definition of crime of violence in Maryland differs from the definition of violent felony under the ACCA, but it still demonstrates an acknowledgement by the Maryland courts that this is being recognized as an aggravated as well as a violent offense. And we also know this, as I stated before, because the structure of the statute. And under the appellant's logic, on the other hand, the portion of section 386 that includes intent to maim, disfigure, or disable would also be rendered non-violent. And the same logic extended even further, it would seem, would also conflict with this court's prior decision in battle, in which it held that assault with intent to murder is a force clause crime of violence. No, it doesn't conflict. What the argument was, and of course, you know, you can argue you heard something different, but he was saying that that's an assault and it comes with it an objective. The objective, murder. The objective, robbery. Those things, you do have to do the assault to the level to accomplish the objective when it clears out. But here, Maryland has said that this encompasses common law assault. Now, you're saying that you have to, the only way you can assault in terms of what the objective of avoiding apprehension is violence, is that what your position is? Because that's what you'd have to do, that's what he's doing, is the only way you can do murder and those kind of things, you have to elevate there. Is that your position, that the only way you can commit a common law assault and with the objective of avoiding apprehension is violent? That's correct. That's the only way you win, right? That's correct, your honor. That is the government's position here. Well, let me give you a hypothetical then. Let's say the police, you would agree that the person who is the object or the subject of your assault doesn't have to be the person who's trying to affect the arrest. You agree with that? That's correct, your honor. Here's my hypothetical or contra, you know, counterfactual, whatever you want. Either way, it's a hypothetical. You're running from a police officer and you're trying to avoid the imminent arrest and a person, a citizen is there standing or blocking the door and you say to her or him, get out of the way or I'll hit you in the head. Is that a common law assault? Is it a common law assault? Yes. Yes. Yes. And was it for the purpose of trying to avoid apprehension? That's correct, your honor. I think it would be, but I think there's an important distinction to be made here. The assault needs to be directed at a victim. And that's the first point. The second point is that- The victim is the person who was standing in the way of the door. You just said that the victim doesn't have to be the person who's trying to affect the arrest. The victim is clear in my hypothetical, the person standing in the door. Get out of my way or I'll beat you because obviously I'm trying to get out of the way so I can get through there so I can avoid being arrested by the police officer who's behind me. Then go ahead and tell me what's- go ahead. Well, your honor, I think the problem here is that the intent to prevent lawful apprehension assumes that the victim is the person who is trying to affect an apprehension. You just told me that now? But you just, yeah, you acknowledged that that wasn't the case. Right. Are you changing your answer now? No, no. I'm simply saying, for instance, I think by way of analogy, we can look at the Barrios case. In Barrios, it was not- there were defendants who were pushing against law enforcement for the purpose of allowing a different defendant to escape. Now, this, in the government's view, does qualify under the statute. And the reason why is because the assault was done with the intent to prevent lawful apprehension. You only get the intent to prevent lawful apprehension because there's an active means of assault occurring with the intent to allow someone else to escape. And then Actus Reus, the Actus Reus doesn't have to be any higher than common law assault. It's the minimal. You're right, all these things that are aggravating are included. The question is, when we do the categorical approach, is what is the minimal Actus Reus that would still qualify for conviction? And that's what my hypothetical is asking you then. A common law assault, which you conceded, has occurred when you say, yeah, well, I'll hit you in the head. Okay, that's a common law assault. And it was for the sole purpose of avoiding apprehension. So, your honor, I think the hypothetical is flawed, because... My hypothetical is flawed? I think it's flawed in terms of satisfying the statute. I don't believe that that satisfies the statute for the reason that the intent to prevent lawful apprehension elevates the Actus Reus. It transforms the Actus Reus into something that would be capable of combating what is apprehension. And I think that's the... Isn't that capable? If I can frighten him or her to get out of the way, that's capable of me getting away. Listen, the only objective of avoiding apprehension is to get away without being arrested. Unlike robbery, you want to take something. Unlike murder and maiming, you want to hurt someone to an extent. You don't want to hurt anyone. All you want to do is get away. And the question is, a common law assault is a no. See, that's what you're trying to do. You're trying to make this more than what's necessary. You think, oh, it's got to be a shootout or smack a police officer. No, it is just to avoid apprehension. Your honor, I think the victim there, though, I don't see how the victim is affecting apprehension in your hypothetical. And that's... If the person says, I'm not going to move because I want to help the police officer capture you, that's not... The victim is not involved in the... How is that done? Well, then I think a threat to strike that person, I think that actually would qualify under the first law. That's what I said. It includes threats of force. Didn't I say... Oh, so that's an act of force? I think in the adjusted hypothetical, yes, it would be. And I think that's the important point to take away here is we're analyzing the level of force that is needed. It's not necessarily the minimum conduct that you can hypothetically think of. It has to fall within assault with intent to prevent apprehension. And all of those factors need to be satisfied. And we see that from the Maryland case law that, at least within the case law that we have before us, every case that we have before us involves a level of force that is beyond the minimus force, your honor. We have in... Yes, but we have... Don't we have the Maryland court saying that all you need is the minimum force, all you need is assault, common law assault? I don't believe we do and... We don't. I don't think we do. And the reason why this is different than the situation in Aparicio is because in Aparicio, the court determined that the Maryland Offense of Resisting Arrest did not qualify as a forced closed crime of violence because Maryland's highest court explicitly held that nonviolent physical contact satisfied the statute. We do not have that here. The Hall court... In Hall, it did not say the offense was identical to resisting arrest. It simply pointed out that the non-existing crime of preventing lawful apprehension would certainly be punishable by more than one year if resisting arrest was also punishable by more than one year. This says nothing about the minimum conduct required to satisfy the statute. So spitting on an officer wouldn't be sufficient? I don't believe spitting on an officer would be sufficient, your honor. No. Is it a common law assault? Is it a common law assault, spitting? I believe it is, yes. Yes, your honor. Things like spitting, throwing water, even pulling free are simply not enough to show assault to prevent lawful apprehension. I don't understand why that's so. Okay, so let's take the spitting or you have a whole thing of water and somebody's in your way and you throw it at them and you're running away from the police. I don't understand what's missing. I think what's missing here is that this type of hypothetical enters the realm of legal imagination, which we're told that we should not do under doctor and monarchy. To say that it's plausible that someone would say spit in an officer's face. I think that's plausible, don't you? Well, your honor, I think certainly a person could and probably has spit at an officer during the course of a lawful apprehension. Now that doesn't mean, I think it's a leap to intuit from that, the specific intention to prevent lawful apprehension through spitting. Sir, put another way. I mean, when you think about it, I don't think it's something that could be uncommon. I mean, any effort, if you don't have any other means to do it, he's using everything that's within his power and maybe the spitting could just distract the officer, allow him to get away or do something else there. I mean, I don't think it's a far-fetched hypothetical. The question is, does it fit within the definition that would allow it to fit on this statute? And no, your honor, I don't think it does. And I would disagree that it's not a far-fetched hypothetical under even the language of the prevent someone from lawfully apprehending you. So speak to the Jones case, the South Carolina case, where you had to spit on the blood of the officer's boot there. So in the Jones case, we said in that case that the jury convicted of assaulting, beating and wounding an officer while resisting because the defendant spit blood on the officer's boot. And I think the reason why Jones came out the way it did was because the court said that mere attempts to touch an officer in a rude or angry manner would satisfy that statute. And I think that's very different than here. And this gets us back to the realistic probability test that was... Let me understand what you just said. Mere attempt to touch him in an angry manner. So it's the what differentiates it is that the court had actually applied it to a situation like that, so that the court had applied that conduct to the statute beforehand, the South Carolina courts. Here, we don't have that. And there's a reason we don't have that. It's because Maryland courts do not recognize something like spitting as qualifying under the statute, that that type of conduct would not satisfy the offense. What tells you that? I think that the lack of cases showing that type of conduct tells that. I think that that demonstrates it. And that actually is what the courts have directed, how the courts have directed. I think Stoeckling would also have some bearing on this, because we could say that theoretically someone could attempt to spit at someone in order to rob them as well. However, that is outside of the realm of what would realistically occur. And so, and I also... Let's speak... So it makes sure we're talking about the same thing. Are we talking about state law in terms of determination of whether a crime of violence exists? And consider that in light of Johnson 1, where the court made it clear that, you know, the question under this particular act is a question of federal law, not state law. And in Maryland, just the punishment alone converts it, but that's not necessarily true under federal law. I mean, we look to the level of violence. I think I would agree with that, Your Honor. However, I do believe there is some interplay between how... There's some interplay between the state and federal law. And here, we look to the state to see what types of conduct would satisfy the statute and whether the statute would, for instance, permit certain types of de minimis conduct. And in the state, we don't see any de minimis. And, you know... Well, you keep saying that. We do, because when they said that it includes common law assault... You see, I don't want to go through some jurisprudential talk about it, but the problem with a lot of these cases is this. When states have these criminal laws, they're not trying to find predicate offenses to add on to enhance federal sentences. They're trying to protect their people. And for you to say it's far-fetched to protect the public, they don't want people to run. That's why they have an interest in saying, the person who's on the street who's a common law assault, get out of my way. That's very common. People are going down the street to get knocked down, that people can have heart attacks, they're elderly people, they're children. They don't want... They don't need violence. They want to make sure people know if you're fleeing, then you're subject to this statute. But that doesn't mean it meets the federal definition of the violence. It's like we're trying to put these shoehorn, these things to enhance sentencing. But states are trying to protect their people, and they don't want people to run from the police. And you are at risk when you come in, threaten people and say, get out of the way, and you bump them hard, and those kinds of things. It may not be forced, but it's something that the state wants to protect, and they have every right to do so to protect the people in Maryland. But that doesn't mean it matches the federal... There's so much angst here to shoehorn these cases. They're not mentioned, but states have a different objective when they do that, when they pass their criminal statutes. Well, Yara, and I see that I'm coming up in only a minute left. So I think I would wrap it up if there's not any more questions. But one last thing I would say is that it's not simply running away from, say, a police officer that has been criminalized. There would be no point in assault with intent to prevent lawful apprehension from something like resisting arrest, which the Maryland state legislature did. And in so doing, assigning more severe penalties if it just encompassed the same type of conduct that, say, running away from the police would encompass. Certainly, that was not the intent of the Maryland legislature to create surplusage here. And we also see this with the maximum penalties that are associated with those two statutes. Assault with intent to prevent lawful apprehension has a 10-year maximum, and resisting arrest in its current form has a three-year maximum. So I just would conclude with that if there are no more questions from the panel. Thank you, Mr. Stewart. Mr. Neal, you have some time as well. Thank you, Your Honor. Just a few points. I think I can be pretty brief. I'd first like to address the defendant's surplusage argument and sort of what is the difference between this offense and resisting arrest. There is a difference between this offense and resisting arrest, and it points in our favor. Resisting arrest requires that the defendant know that a law enforcement officer is attempting to arrest them and resist by force. Claggett tells us that assault with intent to prevent lawful apprehension can, by its plain terms, be committed through battery against a lawkeeper. It could be a store security guard. And so the statute is broader than resisting arrest in the scope of people against whom it may be committed. And so I think the government's surplusage argument here fails. Second, I think the call that we demonstrate is that Aparecio Soraya here provides the governing legal framework. Sitting en banc, this court said it doesn't matter what the factual conduct was in cases that the government cites. In Aparecio Soraya, the court colorfully said the government had a raft of cases, and there was no case where the defendant was able to show that resisting arrest was committed through offensive physical contact. Nonetheless, this court relied on plain statements from the Maryland courts, and we have those same sorts of plain statements here. We have them from several courts, and I would note that the government's argument didn't focus on what the Maryland courts have actually said about this. It is about sort of hypothesizing about how we should interpret the statute and what this potentially elevated form of assault must mean. It's not grounded in how the Maryland courts have approached this offense. And I would note that Claggett referred to the plain text of section 386 as encompassing battery. So I don't think that the Maryland courts even view this as a close call that simple common law assault for battery satisfies the statute here. Third, I'd just like to offer another hypothetical that I think may be illustrative, just in case it's helpful for the panel's consideration. I would note, again, under Aparecio Soraya, we don't need a legal imagination. We don't need hypotheticals. But given the breadth of the statute, I think it could easily and very plausibly be satisfied by a person who enters, say, a convenience store, removes an item from the shelf, attempts to leave the store. The store is an assault of the kind that the panel is bringing up in your questions. They can throw water. They can throw a slushie at the person. They could spit at them. Anything to give that person pause while you try to get out the door or while your friend tries to get out the door. We have Hall, Claggett, and Barrios telling us how Maryland courts view this statute. And I think that really sort of ends the inquiry here, just as it did in Aparecio Soraya. I'm happy to answer any questions, but otherwise, I would just conclude there, Your Honor. So I have a question to ask you that doesn't have anything to do with this case. I see that, did you clerk for somebody in the Fourth Circuit? How did you get here? That's what I'm asking. I did not clerk for somebody on the Fourth Circuit, Your Honor. We have been working on this case with the Federal Public Defender's Office. Thank you. Appreciate your argument. Thank you both. Thank you both for your arguments. We appreciate it very much. We can't come down and shake your hands in our normal Fourth Circuit custom, but please know, nonetheless, that we very much thank you for your arguments and we hope that you'll be safe and stay well. Thank you, counsel. Thank you, Your Honor.
judges: Roger L. Gregory, Diana Gribbon Motz, James Andrew Wynn